UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| R & R BOATS, INC. | CIVIL ACTION |
| VERSUS | NO. 2:24-cv-01875 |
| GOL, LLC | SECTION: L(4) |

### ORDER AND REASONS

Before the Court is a motion filed by Defendant Gulf Offshore Logistics, LLC ("GOL") seeking to disqualify the law firm of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard ("Lugenbuhl") from representing Plaintiff R&R Boats, Inc. ("R&R") in the above-captioned action. R. Doc. 33. Having heard the parties at oral argument and considering the parties' arguments in light of the applicable law and exhibits in the record, the Court will DENY GOL's motion.

1. **BACKGROUND**

The instant dispute arises in the context of a contractual dispute between R&R and GOL. On or about July 21, 2005, R&R and GOL executed a Master Time Charter (the "Master Charter"). This contract governed the chartering of certain vessels owned by R&R as needed to assist GOL in its customer's activities taking place in the Gulf of Mexico. R. Doc. 1 at 1. Per the Master Charter, whenever GOL requested the use of an R&R vessel, the parties would then negotiate a daily hire rate and charter term. *Id.* at 2. Once these essential terms were agreed upon, R&R would deliver the vessel, and GOL chartered the vessel to a customer. *Id.*

Between July and August of 2022, R&R chartered five vessels to GOL and issued a number of invoices reflecting the agreed-upon hire rates and charter terms along with the principal amounts due. *Id.* at 2-3. The invoices allegedly obligate GOL to pay a finance charge of 18% per annum if not paid in full within sixty days of the due date. *Id.* at 3. GOL then chartered each of these five vessels

1

to Cox Operating, LLC ("Cox") in connection with its oil and gas operations. *Id.*

Subsequently, Cox filed a voluntary petition for bankruptcy relief before the United States Bankruptcy Court in the Southern District of Texas. *Id.* On July 24, 2023, GOL filed a Proof of Claim in Cox's bankruptcy case, including a request for payment as to each invoice GOL issued to Cox for the chartered vessels. *Id.* R&R contends that GOL then collected millions in payments from Cox, including invoices for services rendered by R&R's vessels for which GOL failed to remit. *Id.* On May 24, 2024, R&R made amicable demand to GOL for the amounts due under their invoices issued to GOL, but nothing has been paid. *Id.*

On July 26, 2024, R&R filed this action against GOL, alleging breach of contract and suit on open account claims for GOL's failure to pay the invoices owed under the terms of the Master Charter. *Id.* at 1, 4–5. R&R claimed that it is entitled to judgment in its favor for the full sum of $2,815,561.40. *Id.* at 5.

On February 3, 2025, R&R filed an Amended Complaint making the same claims pursuant to a Brokerage Agreement signed by the parties on May 10, 2016, wherein GOL would operate as a broker for R&R's vessels. R. Doc. 19 at 1–2, 4–5. R&R asserts GOL chartered its vessels to Cox under the terms of this brokerage agreement. *Id.* at 2.

In its answer, GOL generally denies all of R&R's allegations and asserts several affirmative defenses including prescription and failure to state a claim. R. Doc. 19.

### A.  INSTANT MOTION

On August 6, 2025, GOL filed the instant Motion to Disqualify Counsel seeking to disqualify Lugenbuhl from representing R&R in this litigation. R. Doc. 33. GOL alleges that Lugenbuhl, via Stewart Peck, an attorney not enrolled in the instant litigation, previously represented GOL in the Cox bankruptcy action that gave rise to the present maritime contract dispute. R. Doc. 33-1 at 1. GOL takes the position that this prior representation creates a disqualifying conflict of interest under

2

Louisiana Rule of Professional Conduct 1.9 that precludes both Mr. Peck and the rest of Lugenbuhl from representing R&R in this case. *Id.* at 2. In the alternative, GOL argues that, should the Court find that no attorney-client relationship was previously formed between GOL and Mr. Peck, Rule 1.18 of the Louisiana Rules of Professional Conduct, concerning duties to prospective clients, also requires the disqualification of Lugenbuhl in this matter.[1]

The Court heard the parties at oral argument on September 11, 2025. At oral argument, the parties introduced as joint exhibits the transcripts of the recently taken depositions of Mr. Peck and Mr. Ronald E. Chaddock, the Chief Executive officer of GOL, whose conversations with Mr. Peck form the basis of this motion. R. Docs. 46-1, 46-2.

2. **APPLICABLE LAW**

Federal courts have courts have the authority—and duty—to disqualify conflicted counsel in order to ensure the ethical practice in law and to uphold the integrity of judicial proceedings. *United States v. Ryan*, 597 F. Supp. 3d 931, 943 (E.D. La. 2022); *see also In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992); *Wheat v. United States*, 486 U.S. 153, 164 (1988). However, "disqualification is a harsh consequence" for both the attorney and the client. *Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 653 (E.D. La. 2018); *see also F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1313 (5th Cir. 1995). Courts must be wary that motions to disqualify are not being used merely as "'procedural weapons' to advance purely tactical purposes." *American Airlines*, 972 F.2d at 611. Accordingly, courts must engage in a "painstaking analysis of the facts and precise application of precedent" when determining whether disqualification is an appropriate remedy. *Acad. of Allergy & Asthma in Primary Care*, 384 F. Supp. 3d at 653 (E.D. La. 2018) (quoting *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174

---

[1] The Court notes that, in addition to opposing the merits of GOL's motion, R&R argues GOL has waived its right to seek disqualification of Lugenbuhl by not raising the issue earlier in this litigation. *See* R. Doc. 41 at 12–15. Because the Court denies GOL's motion on the merits, the Court will not address the issue of waiver.

(5th Cir. 1979)).

Motions to disqualify in the Fifth Circuit are governed by state and national ethical standards, but "the rule of disqualification is not mechanically applied." *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980). Rather, the Court has concluded that in determining the appropriate remedy, "all of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *U.S. Fire Ins. Co.,* 50 F.3d at 1314. When considering ethical criteria, "'[t]he Local Rules' are the most immediate source of guidance for the district court.'" *Treece v. Perrier Condo. Owners Ass'n, Inc*., 559 F. Supp. 3d 530, 535 (E.D. La. 2021) (quoting *U.S. Fire Ins. Co*., 50 F.3d at 1312). The Local Rules for the Eastern District of Louisiana incorporate the Louisiana Rules of Professional Conduct, including Rules 1.9 and 1.18 at issue here. Local Rule 83.2.3.

3. DISCUSSION

    A. Rule 1.9

Louisiana Rule of Professional Conduct 1.9 states, in pertinent part: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." La. Rules Prof. Conduct 1.9(a). To establish a Rule 1.9 violation requiring disqualification, a party must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations. *American Airlines*, 972 F. 2d at 614 (citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989)). The parties here contest both elements.

Whether an attorney-client relationship exists is determined under state law. *Hopper v.*

4

*Frank*, 16 F.3d 92, 95 (5th Cir. 1994). The Louisiana Supreme Court has approvingly applied the test originating from the Restatement (Third) of the Law Governing Lawyers to determine whether a lawyer-client relationship exists. *Zichichi v. Jefferson Ambulatory Surgery Center*, 2008 WL 2859232, at *9 (E.D. La. 2008) (pointing to *In re Austin*, 2006-0630 (La. 11/29/06), 943 So. 2d 341, 347). Under Restatement § 14, as is relevant to this matter, a client-lawyer relationship arises when: "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; . . . the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." Restatement (Third) of the Law Governing Lawyers, § 14 (2000).

At oral argument, GOL retreated from its assertion that Lugenbuhl must be disqualified from representing R&R in this matter under Rule 1.9. GOL conceded that, following Mr. Chaddock's deposition (which was taken between the filing of GOL's Motion to Disqualify Counsel and oral argument on that motion), it became "difficult to argue" that GOL could have *reasonably* relied on Lugenbuhl to provide it legal services as a result of Mr. Chaddock's telephone conversations with Mr. Peck. If such reliance would not have been reasonable, no actual attorney-client relationship was formed between GOL and Lugenbuhl via those conversations, and disqualification under Rule 1.9 is unavailable.

It must at this point be noted that Mr. Chaddock and Mr. Peck's accounts of what transpired during their conversations diverge in several important respects. *Compare., e.g.*, R. Doc. 46-1 at 14–15, *with* R. Doc. 46-2 at 14 (disagreeing whether it was Mr. Chaddock or Mr. Peck who brought up the 'pay when paid' clause in GOL's brokerage agreements when discussing Mr. Peck's potential conflict of interest in representing GOL). For the purpose of resolving this motion, the Court has fully credited Mr. Chaddock's testimony as true. Even with the benefit of this thumb on the scale, the Court agrees that any reliance Mr. Chaddock may have had on Mr. Peck to provide GOL with

5

legal services following their conversations would not have been reasonable. Mr. Chaddock stated that he had three telephone conversations with Mr. Peck. In the third conversation, Mr. Peck informed Mr. Chaddock that he could not represent GOL. R. Doc. 46-1 at 18. In the second conversation, Mr. Peck "b[rought] up that he potentially ha[d] a conflict" due to Lugenbuhl's existing representation of All Coast, LLC and "needed to have a conversation with them about representing GOL." *Id.* at 14. By this account, Mr. Peck thus affirmatively manifested a lack of consent to represent GOL in both the second and third telephone calls with Mr. Chaddock. *See* Restatement § 14. Accordingly, if a prior attorney-client relationship between GOL and Lugenbuhl, it must have arisen during Mr. Chaddock and Mr. Peck's first conversation.

But little was discussed during this "maybe 10, 15 minute[]" conversation. R. Doc. 46-1 at 11. Mr. Chaddock agreed at his deposition that "all [he and Mr Peck] talked about during [the first] call . . . was about gathering strength in numbers in terms of creditors against Cox[,]" and Mr. Peck "explaining to [Mr. Chaddock] that he was well-versed in Louisiana Bankruptcy law and g[iving Mr. Chaddock] at little bit of his background[.]" *Id.* at 12. While Mr. Chaddock states Mr. Peck did not mention a potential conflict in representing GOL at that time, Mr. Chaddock "can't remember if the involuntary bankruptcy" for which Lugenbuhl would ostensibly be representing GOL even came up in the initial conversation. *Id.* at 11. He admits there was no discussion of a brokerage agreement in that conversation. *Id.* He does not assert that Mr. Peck affirmatively indicated willingness to represent GOL or had any specific discussion with him about GOL's position or the anticipated litigation against Cox beyond stating that "collectively in these types of situations the strength is in numbers. So the more of our peers that we had together and fought this case together the potential stronger this case could be for the creditors." *Id.* at 10–11. At the end of the first call, Mr. Peck "said he would follow up with" Mr. Chaddock. *Id.* at 13. No confidential information was discussed and no documents exchanged. Even taking Mr. Chaddock at his word, this brief and insubstantial call is

insufficient to engender reasonable reliance in Mr. Chaddock that Lugenbuhl would be representing GOL in the Cox bankruptcy. The first call thus also does not form the basis of an attorney-client relationship between GOL and Lugenbuhl. Disqualification of Lugenbuhl under Rule 1.9 is unwarranted.

### B. Rule 1.18

At oral argument, GOL argued that Lugenbuhl must still be disqualified from representing R&R in this litigation under Louisiana Rule of Professional Conduct 1.18. Rule 1.18 states, in pertinent part:

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>
> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>
> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (ii) written notice is promptly given to the prospective client.

La. Rules Prof. Conduct 1.18. The parties agree that Rule 1.18(c) is implicated here because

7

GOL was a prospective client of Lugenbuhl with respect to the Cox bankruptcy and Lugenbuhl now represents materially adverse party R&R in a contractual dispute between the parties. *See* R. Docs. 41 at 20–23, 42 at 5. However, they contest both whether the current matter is "substantially related" to the Cox bankruptcy and whether Mr. Peck received from Mr. Chaddock, as a potential client, any "information . . . that could be significantly harmful" to GOL in the current matter. La. Rules Prof. Conduct 1.18(c).

Even if the Court were to hold that the matters are substantially related under the terms of Rule 1.18(c), Mr. Peck did not receive any information from Mr. Chaddock during their conversations that could be significantly harmful to GOL in the instant action. In fact, the only somewhat relevant information raised in their conversations was a general reference to the brokerage agreement between GOL and All Coast, which, as per Mr. Chaddock, was mentioned by Mr. Peck, not Mr. Chaddock himself, and which has no direct connection to the present dispute. At oral argument, GOL emphasized that, acting on Mr. Peck's advice regarding "strength in numbers," Mr. Chaddock referred several other potential Cox creditors to Lugenbuhl for potential representation, including R&R itself. GOL argues that the referral itself constitutes information that is significantly harmful to it in this matter, as R&R is now adversely positioned to GOL. R. Doc. 42 at 5. But the only information Lugenbuhl learned about R&R as a result of Mr. Chaddock's referral of R&R was that R&R was another potential claimant in the anticipated Cox bankruptcy. Neither that referral, or, by Mr. Chaddock's account, any of the facts or issues Mr. Chaddock and Mr. Peck discussed in their three conversations constitute information that would be harmful to GOL in the instant action. Accordingly, disqualification is also unwarranted under Rule 1.18.

### 4. CONCLUSION

Accordingly, for the foregoing reasons;

8

**IT IS ORDERED** that GOL's Motion to Disqualify Counsel, R. Doc. 33, is **DENIED**.

New Orleans, Louisiana, this 22nd day of September, 2025.

_____<br>
United States District Judge