UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| R & R BOATS, INC. | CIVIL ACTION |
| VERSUS | NO. 2:24-cv-01875 |
| GOL, LLC | SECTION: L (4) |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Gulf Offshore Logistics, LLC ("GOL"). R. Doc. 66. Plaintiff R&R Boats, Inc. ("R&R") opposes the motion. R. Doc. 70. GOL filed a reply memorandum, R. Doc. 71, and R&R submitted a surreply, R. Doc. 74. Having considered the parties' arguments in light of the applicable law and exhibits in the record, the Court will GRANT IN PART and DENY IN PART GOL's motion.

**I.     BACKGROUND**

This dispute arises under a brokerage agreement (the "Brokerage Agreement") between R&R and GOL. R. Doc. 19-2. Under the terms of the Brokerage Agreement, R&R appointed GOL as its "agent for obtaining charters for [R&R]'s vessels." *Id.* at 1. This was a non-exclusive appointment whereby GOL "act[ed] for [R&R] on a job-by-job basis[.]" *Id. Inter alia*, the Brokerage Agreement provides that if GOL obtains a charter for an R&R vessel, the charterer may submit payment to GOL, which must then remit payment less its 4% brokerage fee to R&R within fifteen days. *Id.* at 2; *see also* R. Doc. 70-2 at 16. The Brokerage Agreement requires that GOL "undertake all reasonable efforts to collect charter hire from" the charterer, but stipulates that "[u]nder no circumstances shall [GOL] be responsible to [R&R] for the Charterer's non-payment of charter hire." R. Doc. 19-2 at 2.

Between August 2022 and May 7, 2023, various R&R vessels were chartered to Cox

1

Operating, LLC ("Cox"), for which invoices were issued. R. Doc. 19-1. However, these invoices went unpaid and R&R did not continue providing vessels to Cox after May 7, 2023. R. Doc. 70 at 25–26. On May 14, 2023, Cox filed a voluntary petition for bankruptcy before the United States Bankruptcy Court in the Southern District of Texas. R. Doc. 66-2 at 72–78. As part of that proceeding, the bankruptcy court issued an order authorizing Cox "to pay accrued and outstanding prepetition Oil and Gas Obligations[,]" with the caveat that Cox was "authorized to require that, as a condition to receiving any payment of a prepetition claim under this Order, a payee [provide postpetition services to Cox and] maintain or apply, as applicable, terms during the pendency of the [Cox bankruptcy proceeding] that are the same or better than the trade terms that existed immediately prior to the" date Cox's bankruptcy petition was filed. *MLCJR LLC & Ad Hoc Comm. of Statutory Lien Creditors*, Bankr. S.D. Tex. Case No. 23-90324, R. Doc. 112 at 2.

Pursuant to that order, Cox and GOL entered into a trade agreement (the "Trade Agreement") under which Cox agreed to pay $13 million towards the approximately $24.8 million in unpaid prepetition services for which GOL had filed a claim. R. Doc. 70-3. Importantly, the Trade Agreement required that GOL, and any third-party vessel owners whose vessels might be chartered to Cox through GOL as a broker, agree to provide continuing services to Cox under the terms laid out by the bankruptcy court. *Id.* at 1. Subsequently, on July 26, 2024, R&R filed the instant action against GOL, asserting a suit on open account claim under Louisiana law for GOL's failure to pay the $2,815,561.40 balance owed under the invoices for R&R's charter of vessels to Cox through GOL. R. Doc. 19 at 4. In the alternative, R&R raises a claim for breach of contract under general maritime law, asserting GOL "breached the Brokerage Agreement by failing to take reasonable steps to obtain provisions for payment of R&R's

2

Invoices and/or collect and turn over the amounts due under the Invoices." *Id.*

## II.   INSTANT MOTION

GOL now moves the Court to enter summary judgment in its favor dismissing R&R's claims. R. Doc. 66-1. GOL argues that the Louisiana Open Account Statute, La. R.S. § 9:2781, is inapplicable to this case because the Brokerage Agreement is a maritime contract and, as such, "the rights and obligations of the parties should be determined under general maritime law and not Louisiana law." *Id.* at 7–8. As to breach of contract, GOL argues it has taken, and continues to take, all reasonable steps to obtain payment for R&R on the Cox invoices, and that it did not breach the Brokerage Agreement by failing to remit to R&R a portion of the $13 million it received from Cox because those funds were explicitly earmarked by the bankruptcy court's order and the Trade Agreement for vendors able and willing to provide continuing, postpetition services to Cox, and R&R's services to Cox had ceased before Cox filed its bankruptcy petition. R. Doc. 66-1 at 11–13, 15–17.

R&R concedes it cannot prevail on its suit on open account claim because this matter is governed by maritime, not Louisiana, law. R. Doc. 70 at 1. However, R&R opposes summary judgment on its alternate claim for breach of contract. *Id.* at 2–4. In maritime cases, a plaintiff alleging breach of contract must demonstrate the following elements: "'(1) contract; (2) breach of that contract; and (3) damages.'" *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 324 (E.D. La. 2020) (quoting *FEC Heliports, LLC v. Hornbeck Offshore Operators*, *LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016)). R&R argues that GOL failed to undertake all reasonable efforts to collect what R&R is owed by Cox and violated its fiduciary duties to R&R as R&R's agent by failing to disclose to R&R the $13 million GOL was receiving from Cox and neglecting to offer R&R the opportunity to qualify for

3

a portion of those funds by agreeing to provide Cox postpetition services. *Id.* Accordingly, R&R asks the Court to deny GOL's motion for summary judgment and allow its breach of contract claim to proceed to trial.

### III.   APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

Additionally, the Court notes that this matter is set for bench trial. "[E]ven at the summary judgment stage, a judge in a bench trial has the limited discretion to decide that the

same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result." *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991). This is because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact." *Id.*

## IV.   DISCUSSION

As an initial matter, as noted *supra*, R&R concedes that it cannot prevail on its Louisiana law suit on open account claim. *See* R. Doc. 70 at 1. The Court will thus grant GOL's motion for summary judgment as to that claim.

R&R's breach of contract claim raises a more difficult question. Luckily, the Court is not presented with untrodden ground in answering it. As the parties recognize, another section of this court recently granted summary judgment to GOL against SEACOR Marine LLC ("SEACOR"), another vessel owner with which GOL entered into a substantially identical brokerage agreement to charter vessels to Cox and which also sued GOL on the basis that GOL had breached the brokerage agreement and that SEACOR was entitled to a portion of the $13 million GOL received from Cox. R. Doc 66-2 at 23–55; *see also Seacor Marine LLC v. GOL, LLC*, Case No. 24-2409, R. Doc. 65. That court explained that SEACOR was not entitled to a portion of those funds because it had not agreed to continue providing postpetition services to Cox under the same or more favorable terms as its prepetition services, as required by the bankruptcy court's order and the Trade Agreement for a vendor to qualify for payment for prepetition services. *Seacor Marine*, Case No. 24-2409, R. Doc. 65 at 16–18. The same is true for R&R in this case: R&R did not provide postpetition services to Cox, so, as GOL argues, was ineligible to obtain a portion of the $13 million the bankruptcy court had permitted Cox to expend during the pendency of its bankruptcy. R&R therefore cannot recover payment on the subject invoices from

GOL on the basis that the $13 million it received included payment on those invoices.

Still, R&R argues that GOL breached the Brokerage Agreement and its duty as R&R's agent by failing to "make all reasonable efforts to obtain provisions for payment for R&R Boats when it withheld an opportunity from R&R Boats to have its $2.8 million claim paid[;]" i.e., by failing to disclose to R&R that it was receiving the $13 million from Cox and that R&R might obtain some portion of those funds in payment for its prepetition services if it agreed to continue providing postpetition services to Cox. R. Doc. 70 at 16.

R&R does not contest that GOL filed liens on its behalf against Cox properties, filed a Notice of Perfection to preserve the liens, and filed a Proof of Claim in the Cox Bankruptcy which encompassed amounts owed to R&R under the subject invoices. *See* R. Doc. 66-2 at 84–237. GOL also continues to press its claim for payment on R&R's invoices in the still-pending Cox bankruptcy action. R. Doc. 71 at 1–2. The court in the SEACOR matter held these efforts to constitute "all reasonable efforts" that GOL could have taken to obtain payment for its third-party vessel owners under the terms of the Brokerage Agreement. *Seacor Marine*, Case No. 24-2409, R. Doc. 65 at 29–31. As that court explained,

> When the word reasonable modifies other terms in the contract, as it does here with "efforts," the Fifth Circuit has held that "it is used . . . to designate that specific [efforts] . . . that would be thought satisfactory to the offeror by a reasonable man in the position of the offeree." *Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 425 (5th Cir. 2013) (cleaned up). This determination requires consideration of "the circumstances of the case, including the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade." *Id.* (cleaned up).

*Id.* at 29–30. As in *Seacor Marine*, the Brokerage Agreement between R&R and GOL does not specify a date by which GOL was required to obtain payment from Cox for R&R, and stipulates plainly that GOL is not liable to R&R for any balance unpaid by a charterer. *See* R. Doc. 19-2.

However, there are two differences present in the instant case. In *Seacor Marine*,

6

SEACOR identified no specific steps GOL could have taken to better constitute "all reasonable efforts[,]" and did not argue that it should have been invited to provide postpetition services to Cox pursuant to the Trade Agreement. *Seacor Marine*, Case No. 24-2409, R. Doc. 65 at 30–31. Here, R&R argues that GOL's failure to make such an invitation to it renders GOL's efforts less than "all reasonable." R. Doc. 70 at 13–19. Additionally, one basis of the court's holding in *Seacor Marine* that GOL had not breached its duty to SEACOR was that the brokerage agreement between GOL and SEACOR states that SEACOR is appointing GOL as its agent "*solely* for the purpose of obtaining charters for [SEACOR's] vessels." *Seacor Marine*, Case No. 24-2409, R. Doc. 65 at 26–27 (emphasis added). Based on this language, the *Seacor Marine* court found GOL's agency relationship with SEACOR and fiduciary duties to SEACOR to be limited. Accordingly, it explained, "SEACOR cannot challenge GOL's actions under a theory that it had a fiduciary duty to SEACOR over money to which SEACOR was not entitled. To allow such a claim would require expanding the fiduciary obligation beyond the agreement and scope of the parties' relationship." *Id.* at 28.

In the instant Brokerage Agreement, however, the word "solely" is omitted. *See* R. Doc. 19-2 at 1. R&R thus argues that the scope of GOL's fiduciary duty to it is broader than the scope derived from the brokerage agreement in *Seacor Marine*. R. Doc. 70 at 4–5. It is true that the scope of GOL's duties to SEACOR and responsibilities with regard to obtaining payment on SEACOR's behalf as laid out in those sections of the respective brokerage agreements are identical to GOL's duties and responsibilities to R&R. But GOL's corporate representative testified at this deposition that GOL was "as an agent on behalf of [R&R] to procure work and jobs, and then, in turn, *as a collection agent* for the charter hire." R. Doc. 70-2 at 29 (emphasis added). In light of the potentially broader contractual scope of GOL's agency duties to R&R

7

under the Brokerage Agreement, this indicates that there exists at minimum a genuine issue of material fact as to whether GOL was R&R's agent not just for the purpose of obtaining charter of its vessels, but also securing payment for those charters.

This, in turn, creates an issue of material fact as to whether GOL undertook all reasonable efforts to obtain payment on the subject invoices as required by the Brokerage Agreement and GOL's agency relationship with R&R. GOL asserts that R&R was not willing or able to supply postpetition services to Cox because it had ceased to do so prior to Cox's filing of bankruptcy, rendering GOL's actions reasonable. But R&R has submitted an affidavit stating it "would have considered agreeing to provide [postpetition] services" to Cox on the same or more favorable terms as its prepetition services had it learned from GOL about the opportunity to receive payment for at least some of its prepetition services from the $13 million GOL received. R. Doc. 70-5 at 2. Taking this affidavit as true, GOL may have breached the Brokerage Agreement and its agency duty to R&R by failing to inform R&R of this opportunity, and may have caused R&R to incur damages thereby.[1] Because the scope of GOL's duty and the question of whether GOL's actions undertaken to secure payment for R&R constitute "all reasonable efforts" are issues pregnant with fact, the entry of summary judgment as to R&R's breach of contract claim would be inappropriate. This claim must proceed to trial.

V.  **CONCLUSION**

Accordingly, for the foregoing reasons;

---

[1] GOL argues that R&R's affidavit is self-serving and contradicted by the record based on the deposition testimony of R&R's corporate representative, pointing out that he agreed that, after Cox filed for bankruptcy, "R&R was not in a position to continue providing vessels to Cox . . . under the terms as they existed prior to the bankruptcy[.]" R. Doc. 71-1 at 3. However, as R&R argues in its surreply, there is no contradiction between this testimony and R&R's affidavit. *See* R. Doc. 74 at 1–3. R&R's corporate representative did not testify that it could under no circumstances have continued providing postpetition services to Cox; rather, he testified that R&R was not in a position to continue doing so because of Cox's nonpayment for prepetition services. Accordingly, if R&R had been offered the opportunity to obtain payment for some or all of its prepetition services to Cox by agreeing to provide postpetition services, it may well have considered taking that opportunity, as R&R now attests.

**IT IS ORDERED** that GOL's Motion for Summary Judgment, R. Doc. 66, is **GRANTED IN PART** and **DENIED IN PART** as laid out herein.

New Orleans, Louisiana, this 19th day of December, 2025.

_____
United States District Judge

Case 2:24-cv-01875-EEF-KWR   Document 76   Filed 12/19/25   Page 9 of 9