UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **R & R BOATS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 2:24-cv-01875** |
| **GOL, LLC** | **SECTION: L(4)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This suit arises out of an alleged breach of a brokerage agreement between R&R Boats, Inc. ("R&R") and GOL, LLC ("GOL"). Under the terms of the brokerage agreement, R&R appointed GOL as its agent for obtaining charters for R&R's vessels and taking all reasonable steps to collect the charter fee from the charterer. Between August of 2022 and May of 2023, various R&R vessels were chartered by GOL to Cox Operating, LLC ("Cox") for which invoices were issued. However, the invoices went unpaid. R&R has brought this suit against GOL under General Maritime Law alleging that GOL breached the brokerage agreement by failing to take all reasonable steps to obtain payment for R&R. GOL alleges it took all reasonable steps to obtain payment and denies it breached the brokerage agreement. These alternate positions created questions of fact which must be resolved by trial. Consequently, this matter came on for trial before the Court without a jury on January 13 and 14, 2026.

After considering all of the testimony, exhibits introduced into evidence, and the applicable portions of the record, the Court issues the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court finds it as such, and to the extent that any conclusion of law constitutes a finding of fact the Court finds it as such.

1

## FINDINGS OF FACT

1. Plaintiff, R&R Boats, is a Louisiana corporation in the business of providing vessels in support of offshore operations, including oil and gas activities in the Gulf of Mexico. In order to sustain operations and earn a profit, R&R Boats depends on the charter hire it receives for charters of its vessels. At all times relevant hereto, R&R Boats was the owner-operator of the crew boat vessels: *M/V Lyla Angelle*, *M/V Dylan John*, *M/V Landon James*, *M/V Zachary Taylor*, and *M/V Jessica Faye*.

2. Defendant, GOL, is a Louisiana limited liability company with its principal place of business in Raceland, Louisiana. GOL is a boat-broker. GOL's business consists of brokering charters between persons who need vessels and vessel owners and operators. GOL does not own or operate any vessels itself. GOL derives all of its regular income from "broker fees" it charges to vessel owners and operators with whom GOL contracts (the "Operators"). Pursuant to each individual brokerage agreement, the Operator and GOL agree that, for any charter obtained by GOL and accepted by the Operator, GOL will collect resulting charter hire on behalf of the Operator and remit it to the operator retaining for itself a "broker's fee" from the proceeds, consisting of a percentage of the charter hire collected by GOL on behalf of its principal. The broker's fee that GOL charges under its brokerage agreements ranges from 3.5% to 5%, but is typically 4%.

3. Defendant GOL is owned by three individuals: Ronald "Rec" Chaddock who owns 50%; Joel Broussard who owns 40%; and Todd Danos who owns 10%. The three owners individually also own several affiliated companies.

4. Mr. Chaddock controls 100% of the equity in REC Marine Logistics, LLC ("REC

Marine"). REC Marine and GOL share some office space and GOL employees often provide operational support to REC Marine. Additionally, at the times relevant to this dispute, Mr. Chaddock was president of GOL.

5. Mr. Chaddock and Mr. Broussard are each 50% owners in another company, RO Boats, LLC ("RO Boats"). RO Boats also shares office space with GOL, and they both have the same General Counsel, Bart Bellaire.

6. Mr. Danos separately owns 100% of Lafourche Tugs, Inc. ("Lafourche Tugs").

7. Like R&R Boats, REC Marine, RO Boats, and Lafourche Tugs are in the business of providing vessels in support of offshore operations, including oil and gas activities in the Gulf of Mexico. REC Marine, like R&R Boats, provides crew boat vessel services as a part of its business.

8. REC Marine, RO Boats, and Lafourche Tugs (collectively, the "GOL-Affiliated Operators") are all vessel Operators who have entered individual brokerage agreements with GOL.

9. On or about March 28, 2011, REC Marine entered into a Master Services Agreement with Cox Operating, LLC, which was effective March 28, 2011. The Master Services Agreement was later assigned to GOL

10. On May 10, 2016, R&R Boats and GOL entered into the Agreement ("Agreement") which is the subject matter of the present lawsuit. The Agreement provides, "Operator hereby appoints Broker as Operator's agent for obtaining charters for Operator's vessels." Agmt. at 1. Under the Agreement, once R&R Boats orally accepted a job, "[GOL] was authorized . . . to sign, as agent on behalf of Operator, a Charter, Work Order or similar agreement, should same be required by the Charterer." *Id.*

11. The Agreement contemplates that, post-charter, GOL will invoice the charterer, obtain and remit payment to the principal (Operator) less a percentage as its brokerage fee. Under the

3

Agreement, GOL agreed to "Undertake all reasonable efforts to collect charter hire from the Charterer" Agmt. ¶ 4 D at p 2.

12. The Agreement further provides GOL will "remit net charter hire (charter hire less Broker's fee) to Operator within fifteen (15) business days after receipt of such charter hire from the Charterer." The Agreement states it shall be "governed, interpreted and controlled by the General Maritime Laws of the United States of America." Agmt. at 3.

13. Between August 2022 and May 7, 2023, R&R Boats chartered *M/V Lyla Angelle*, *M/V Dylan John*, *M/V Landon James*, *M/V Zachary Taylor*, and *M/V Jessica Faye* to Cox through GOL pursuant to the Agreement.

14. Thereafter, R&R Boats used the vessels' logs to prepare a draft of the invoices for the chartered services and sent them to GOL (the "R&R Invoices"). GOL then created the final invoices by adding their Brokerage fee, including the oil field platform serviced, and the vessel's daily hire rate and sent them to Cox for payment.

15. In the past Cox would pay GOL's invoices in approximately 30 days, and GOL would remit the charter hire to R&R Boats approximately 15 days after receipt.

16. However, as of August 2022, Cox was not making payments timely as it had in the past. R&R Boats, however, did not stop providing vessels to Cox in response; instead, R&R Boats directed GOL over the following eight months to focus on collecting sufficient amounts which would allow R&R Boats to continue paying its operational expenses, including payroll and a portion of the past due charter hire. This was agreeable with Cox and R&R continued to supply vessels for Cox. But Cox did not or was not able to make the necessary payments and, in a short time, R&R Boats became particularly concerned about the rate at which new amounts accruing were outpacing Cox's catch-up payments toward outstanding invoices. Eventually, the principal

sum owed to R&R Boats increased to $2,815,561.40.

17. In response to Cox's non-payment of GOL invoices, GOL recorded multiple liens (the "GOL Liens") against Cox's oil and gas producing properties to secure payment of the outstanding invoices issued by GOL, including the R&R Boats Invoices.

18. On May 12, 2023, R&R Boats and other creditors of Cox filed an *Involuntary Petition Against a Non-Individual* to place Cox into bankruptcy the U.S. Bankruptcy Court for the Eastern District of Louisiana. The Involuntary Petition was filed under Chapter 7.

19. Two days later, on May 14, 2023, Cox and affiliated companies filed Voluntary Petitions for bankruptcy under Chapter 11 of the bankruptcy code in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, *In re MLCJR*, LLC, et al., Case No. 23-90324 (the "Cox Bankruptcy").

20. Thereafter, Cox filed a motion in the Eastern District of Louisiana seeking to transfer venue of its bankruptcy proceeding to the Southern District of Texas to allow it to proceed with its plan of reorganization under its Chapter 11 proceeding filed in that district. The Eastern District Bankruptcy Court transferred the matter to Texas.

21. Thereafter, GOL filed a Notice of Perfection, Continuation of Maintenance of Liens to perfect those liens on July 5, 2023, and on July 24, 2023, GOL filed a Proof of Claim in the Cox Bankruptcy which encompassed the amounts owed on the R&R invoices. R&R also filed a Proof of Claim in the Cox Bankruptcy Proceeding for its unpaid invoices. The Proofs of Claims filed both by R&R and GOL remain pending in the Cox Bankruptcy Proceeding.

22. On May 16, 2023, the bankruptcy court overseeing Cox's bankruptcy entered an *Order in response to Cox's "Essential Vendor " Motion (A) Authorizing the Payment of Certain (I) Essential Vendor Obligations, (II) Marketing Expenses, And (III) Outstanding Orders, And (B) Granting*

*Related Relief* (No. 23-90324, R. Doc. 112) (the "Critical Vendor Order"), authorizing Cox and its co-debtors to make payments to certain vendors on account of their pre-petition claims to induce them to provide post-petition services to Cox to allow it to reorganize to continue its operations.

23. This "Essential Vendor Motion" stated that the "Debtors intend to pay Essential Vendor obligations . . . only to the extent necessary to preserve their business and only to the extent that Vendors receiving such payments agree to continue providing goods and services . . . [under] customary Trade Terms."

24. Paragraph 3 of the Essential Vendor Order authorizes the Debtors "to require that, as a condition to receiving any payment of a prepetition claim under this Order, a payee maintain or apply, as applicable, terms during the pendency of the Chapter 11 Cases that are the same or better than the trade terms that existed immediately prior to the Petition Date. . .".

25. The Essential Vendor Order further provides that "if a payee, after receiving a payment of a prepetition claim under this Order, ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, deem such payment to apply instead to any post-petition amount that may be owing to such payee or treat such payment as an avoidable post-petition transfer of property."

26. When it filed bankruptcy, Cox scheduled GOL as having a $24,804,863 prepetition unsecured claim, making GOL Cox's ostensibly largest unsecured creditor. *In re MLCJR, LLC, et al.,* No. 23-90328 (Bankr. S.D. Tex. May 14, 2023) (Rec. Doc. 1 at 13). However, at least 95% of this approximate $24.8 million amount consisted of the claims of GOL's Operators, inclusive of R&R Boats' prepetition claim in the amount of $2,815,561.40.

27. R&R Boats' claim, in the amount $2,815,561.40, constituted approximately 11% of the $24.8 million prepetition claim attributed to GOL.

28.     Following the Essential Vendor Order, Cox asked GOL to enter into a "Trade Agreement." Under the terms of Cox's proposal, in exchange for a $13 million payment toward the $24.8 million prepetition claim Cox had attributed to GOL, GOL would continue to provide vessels to Cox on terms as favorable, or more favorable to Cox, as existed prior to the bankruptcy. The $13 million payment on account of the $24.8 prepetition claim represented a 52% of the collective claims of GOL's Operators.

29.     GOL offered the work opportunity to its affiliates, and after receipt of the $13 million, GOL transmitted the bulk of the sum to them: $7.8 million to REC Marine; approximately $740,000 to Lafourche Tugs; and $495,000 to RO Boats.

30.     RO Boats had no prepetition claim against Cox whatsoever. RO Boats also provided no post-petition services for Cox. With respect to the approximately $500,000 paid to RO Boats, GOL stated this was a "loan," but there are no documents memorializing such loan.

31.     REC Marine and Lafourche Tugs did provide post-petition services to Cox, though the amounts they received from the $13 million sum exceeded the amounts of their prepetition claims.

32.     GOL did not inform R&R Boats there was an opportunity to receive some payment of its $2.8 million prepetition claim provided that R&R Boats was willing to provide post-petition services to Cox on terms as favorable or more favorable as had been agreed post-petition.

33.     If offered the opportunity, the evidence supports the conclusion that R&R Boats would have provided post-petition services to Cox on terms as favorable, or more favorable, to Cox as had existed prepetition in exchange for any payment of its prepetition claim.

34.     GOL did not disburse any of the $13 million it received for payment of prepetition claims against Cox to R&R Boats.

**CONCLUSIONS OF LAW**

1.      This case arises under the Court's admiralty and maritime jurisdiction within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2).

2.      The Agreement between R&R Boats and GOL is a maritime contract of agency and federal maritime law controls this dispute. In maritime cases, a plaintiff alleging breach of contract must demonstrate the following elements: "(1) contract; (2) breach of that contract; and (3) damages." *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 324 (E.D. La. 2020) (quoting *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016)).

3.      Federal maritime law embraces the general principles of agency. *Port Ship Service, Inc. v. International Ship Management and Agencies Service, Inc.*, 800 F.2d 1418 (5th Cir. 1986*); Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103 (5th Cir. 1985). And courts within the Fifth Circuit apply the Restatement of Agency to maritime cases. *See, e.g.*, *Huntsman, LLC v. Blessey Marine Service, Inc.*, 2016 WL 1031330, at *4 (E.D. La. Mar. 15, 2016)

4.      "Agency is the fiduciary relationship that arises when oneperson (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *see id.* § 1.02 (agency is established if elements set forth in section 1.01 exist). "A person manifests assent or intention through written or spoken words or other conduct." Id. § 1.03. Thus, the essential elements of an agency relationship are assent and control, which are evidenced by the parties' agreement as well as their conduct.

5.     The present Agreement is a maritime contract of agency. R&R Boats and GOL manifested their assent through a writing, the Agreement, and by their conduct. Pursuant to the Agreement, the parties explicitly assented to GOL serving as agent for the purpose of GOL obtaining jobs for R&R Boats. Moreover, with respect to Cox, GOL and R&R Boats assented to GOL acting as R&R Boats' agent for the purpose of invoicing Cox, collecting payment, and remitting payment to R&R. GOL explicitly "agree[d] to undertake all reasonable efforts to collect charter hire" from Cox.

7.     Accordingly, GOL was R&R Boats' collection agent with respect to Cox, and GOL owed fiduciary duties of loyalty, good, faith, care, disclosure, and performance to R&R Boats. *See* Restatement (Third) of Agency §§ 8.01–8.12.

8.     The principal-agent relationship is fiduciary by nature and imposes a duty of loyalty, good faith and fair dealing on the agent. "An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." *Id.* § 8.01 (2006).

9.     Specifically, "[a]n agent has a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the agent's use of the agent's position," *id.* § 8.02, and to "not use property of the principal for the agent's own purposes or those of a third party." *Id.* § 8.05.

10.    Accordingly, once R&R Boats accepted the Cox job from GOL, GOL was obligated to subordinate its interests, and those of other third parties, to the interests of R&R Boats with respect to that job. *See id.* § 8.01(a) cmt. (a).

11.    GOL and R&R Boats' interests became misaligned when GOL was given access to a limited sum which was insufficient to pay all of GOL's Operators with outstanding claims from the charterer in full.

12.    At the time GOL received Cox's offer to pay $13 million on account of the $24.8

9

Prepetition Claim attributed to GOL, GOL was currently engaged as R&R Boat's agent to collect on R&R Boats' $2.8 million claim.

13. The offer was material to GOL's duty to use reasonable efforts to obtain payment on R&R Boats' claim. GOL knew—or at least reasonably should have known—that R&R Boats would have been interested to learn that Cox was offering to pay GOL approximately 52% of the prepetition claim GOL was asserting on behalf of its Operators, among whom R&R Boats was included.

14. Yet, GOL did not disclose to R&R Boats that it had received the offer. GOL negotiated and entered into the "Trade Agreement" with Cox without any notice to R&R Boats.

15. It would have been reasonable for GOL to give R&R Boats notice that there was opportunity for R&R Boats to receive partial payment of its $2.8 million prepetition claim, in exchange for R&R Boats agreeing to provide post-petition services to Cox.

16. GOL's explicit duties under the Agreement were to "use reasonable efforts to obtain from the Charterer provisions for payment within a reasonable time" and "undertake all reasonable efforts to collect charter hire from the Charterer." Agmt. at 2.

17. GOL's failure to even attempt to use the $13 million as a provision for payment on R&R Boats' $2.8 million pre-petition claim was not reasonable.

18. By failing to make effort to provide for payment to R&R Boats from the $13 million in Trade Agreement funds, GOL breached its duties under the Trade Agreement.

19. GOL's conduct was contrary to the interest of R&R Boats and a breach of its duties as agent.

20. GOL's conduct also constituted a willful breach of the implied duties under the Agreement to operate in good faith and loyally to R&R Boats. *See Turnbow v. Life Partners, Inc.*, No. 3:11-

CV-1030-M, 2012 WL 4473080, at *6 (N.D. Tex. Sept. 28, 2012) (finding that contract creating agency relationship bound the agent to abide by common law agency principles not explicitly set forth in the contact), *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 167 (E.D.N.Y. 2010) ("It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself.").

21. Under common law agency principles, GOL had an affirmative duty not to acquire a material benefit from Cox for itself by virtue its position as an intermediary collecting on R&R Boats' behalf. Restatement (Third) Of Agency § 8.02 ("An agent has a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the agent's use of the agent's position."). GOL likewise had a duty not to use R&R Boats' right to payment against Cox for GOL's own purposes or the purposes of the GOL-Affiliated Operators. Restatement (Third) of Agency §, and 8.05 ("An agent has a duty . . . not to use property of the principal for the agent's own purposes or those of a third party. . . .").

22. GOL breached its implied duties as agent by obtaining the $13 million partially on the basis of R&R Boats' claim and then distributing the sum without the notice or consent of R&R Boats, including to the GOL-Affiliated Operators.

23. Accordingly, the Court finds that GOL violated its explicit duties under the Agreement to make all reasonable efforts to collect charter hire on R&R Boats' behalf and its implied duties to act loyally, faithfully, and with full disclosure as R&R Boats' collection agent. The Court further finds that R&R Boats has suffered damages as a result.

24. "[A]n award for prejudgment interest in actions under the general maritime law is the rule

rather than the exception; prejudgment interest must be awarded unless unusual circumstances make an award inequitable." *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986). "In admiralty cases, prejudgment interest is not awarded as a penalty but as compensation for use of funds by the defendant to which the plaintiff is entitled." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 753 (5th Cir. 1985). The Court will award prejudgment and post-judgment interest to R&R Boats.

25. Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.A. § 1961. The interest rate for the week of January 2, 2026, the week preceding the judgment, is 3.47%.

26. Courts have broad discretion in setting the appropriate prejudgment interest rate in an admiralty case. *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1236 (5th Cir. 1986). Courts may look to "state law or other reasonable guideposts indicating a fair level of compensation." *Id.* Such guideposts include the prejudgment interest rate of the state in which the court sits, the rate established by 28 U.S.C. § 1961, or the injured party's cost of borrowing. *See, e.g., Randolph v. Laeisz*, 896 F.2d 964, 969 (5th Cir. 1990); *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1029 (5th Cir. 1986); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel, Her Cargo, Apparel, Tackle, & Furniture, in a Cause of Salvage, Civil & Mar.*, 695 F.2d 893, 907 (5th Cir. 1983).

27. Given that admiralty law does not prescribe a specific interest rate, the Court will apply the Louisiana rate of prejudgment interest at the rate fixed by La. R.S. § 9:3500(B)(1). *See, e.g., Marquette Transportation Co. Gulf-Inland, LLC v. Bulgare*, No. CV 19-10927, 2022 WL

12

5520694, at *1 (E.D. La. May 17, 2022).

28.    The Court finds for R&R Boats in the amount of $1,430,000. This constitutes 11% of the $13 million that GOL received from Cox, in recognition of the fact that the $2,815,561.40 balance owed to R&R under the Cox invoices constituted 11% of GOL's total prepetition claim in the Cox bankruptcy action; and additionally that R&R may ultimately recover all or some portion of the balance owed to it by Cox via R&R's claims in the still-pending Cox bankruptcy. R&R is also awarded prejudgment interest of the rates fixed by La. R.S. § 9:3500(B)(1) from May 30, 2023 to date, postjudgment interest of 3.47% per annum from date of judgment until paid, and reasonable attorneys' fees and costs.

29.    A Judgment will be entered in accordance with these Findings and Conclusions.

New Orleans, Louisiana, this 9th day of February, 2026.

_____
United States District Judge